the power of judge, jury, and police officer; but this assumption can give no jurisdiction to the court.

Mr. Van Wyck then commented ably and at large upon the facts as proved, which he contended did not make out the charge as set forth in the indictment.

Mr. Baldwin, on the same side, observed that there was certainly some difficulty in determining whether this case came under the jurisdiction of the court. It took place in the Bay of Cadiz, within the acknowledged jurisdiction of Spain; and to decide that it is subject to the authority of this court would necessarily involve the principle that a man may be tried twice for the one offence. This was abhorrent to our own laws and the laws of England. Piracy presents a different question. There, a first would be a bar to a second trial; for, it being a crime against all nations, each has the right to make its own laws to punish it. It will be objected that Great Britain assumes jurisdiction of offences committed on board her ships all over the world. But the parliament of Great Britain is said to be omnipotent. The constitution of the United States is limited, and we cannot follow their example. Mr. Baldwin adverted to the differences in the definition of the "high seas," as construed by the common law and admiralty courts, and contended that, however the construction might be in relation to them, yet the true intent and meaning of congress in the act referred to was that the high seas were those waters over which all nations had the right of passing, but neither had the exclusive jurisdiction; and that the words "havens, bays," &c., were meant to provide for cases wherein—like the river La Plata—the mouth is so wide that jurisdiction cannot be exercised from the shore, or bays, like those of Bengal, Biscay, or Honduras. Mr. Baldwin commented, at considerable length, upon the construction of the law as applied to the case, and adverted to U. S. v. Ross [Case No. 16,196]; Ross' Case, 5 Wheat. [18 U S.] 200; and section 43 of Graydon's Digest, and concluded his remarks by an address to the jury upon the matters of fact in evidence.

Mr. Haines, on the part of the prosecution, contended for the positions which follow. Our limits preclude the illustrations and arguments by which they were enforced. He argued

(1) That the murder was committed on the high seas.

(2) That the 8th section of the statute of congress passed in 1790 clearly included the crime, even admitting that it was committed on the high seas

(3) That congress has the constitutional power to pass the law alluded to; and

(4) That the crime committed by the prisoner was murder, and not manslaughter.

Mr. Tillotson, Dist. Atty., concluded the argument in support of the prosecution, and confined his remarks principally to an exposition of the facts, and the grade of crime to which they necessarily pointed. His observations were perspicuous and liberal, and occupied the court until 11 o'clock in the evening.

Before THOMPSON, Circuit Justice, and VAN NESS, District Judge.

THOMPSON, Circuit Justice, then addressed the jury, and presented to them the law and the facts, in a very able and clear point of view. At half past 11 the jury were sent out, and returned at 1 o'clock on Saturday morning, with a special verdict: "Guilty of murder in the Bay of Cadiz." This verdict leaves the question of jurisdiction, which was an important point in the trial, open for revision. The judge stated that he was not clear upon the point, and suggested to the jury the verdict they gave, should they be satisfied that the crime in its nature amounted to murder. The cause will be carried up to the supreme court of the United States.

---

## Case No. 15,242.

UNITED STATES v. The GOVERNOR CUSHMAN.

[See Case No. 5,646.]

---

## Case No. 15,243.

UNITED STATES v. The GRACE MEADE.

[2 Hughes, 83;[1] 22 Int. Rev. Rec. 91.]

District Court, E. D. Virginia.   March 13. 1876.

SHIPPING REGULATIONS — CHANGE OF NAME — IDENTITY OF VESSEL—REBUILDING.

1. It is the policy of the admiralty law to discourage changes in the names of vessels.

2. Admiralty courts, therefore, will go very far in ruling that rebuilt vessels are in law identical with those from the material of which they are built, and in requiring them to be registered in the same names.

3. Where any substantial portion of the frame or skeleton of an old vessel is built upon and preserved intact, in constructing the new, the courts lean towards holding the vessel to be the same in law.

4. But where no such part of the frame or skeleton is left intact, but each timber of the old vessel is first dislocated before being used in the new, in such case the vessel is a new one, and may bear a new name, though having the model of the old vessel.

[Cited in Hartupee v. Coal Bluff No. 2, Case No. 6,172.]

In admiralty.   Libel for forfeiture.

HUGHES, District Judge. The United States brings this libel, demanding forfeiture of the steam tug Grace Meade, for an alleged change of name, under the act of congress ap-

---

1 [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]